

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JAJ:CB

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 23, 2010

By Hand Delivery & ECF

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Anthony Mayes
           Criminal Docket No. 10-473 (S-1)(ARR)

Dear Judge Ross:

      The government submits this letter in response to the defendant's letter, dated July 21, 2010, requesting the release of the defendant on bail. For the reasons stated below, the government submits that there is no condition or combination of conditions that will reasonably assure the defendant's continued appearance at court proceedings and the safety of others or the community. In addition, the government submits that the proposed package is inappropriate and insufficient for this defendant.

I.    Background

      For several years, the Federal Bureau of Investigation (FBI) has been investigating violent criminal organizations operating in the East New York section of Brooklyn. These organizations have been responsible for narcotics trafficking offenses and numerous acts of violence, including murder and attempted murder. Based on this investigation, the FBI determined that the defendant and his brother Antoine Mayes were involved in one of these organizations. Among other things, the Mayes Brothers – known as "Big Bo" and "Little Bo" – were reputed to have been involved in multiple homicides in New York and North Carolina.

In support of their investigation, the FBI obtained judicially-authorized wire taps of the cellular telephones of the defendant and Antoine Mayes. The FBI also conducted numerous controlled buys of significant quantities of crack cocaine from Antoine Mayes. Finally, the FBI determined that the defendants resided at 111-12 169th Street in Jamaica, Queens -- the same residence proposed in the defendant's bail package -- and that they regularly used this residence as a "stash house."

In June 2010, a grand jury returned an indictment and arrest warrants against the defendant and his brother. At that time, United States Magistrate Judge Stephen M. Gold also authorized a search of the defendants' residence. On June 16, 2010, the FBI executed the arrest warrant for the defendant and searched his residence. In that search, the FBI recovered, among other things and scattered throughout the residence:

- two firearms;
- 517 rounds of ammunition;
- 70 grams of crack cocaine;
- 500 grams of powder cocaine;
- various drug-related items; and
- approximately $60,000 in United States currency.

The defendant's parents – his two proposed sureties – lived at the 111-12 169th Street residence and were present during the search. One of the firearms that was recovered during the search was found in the closet in the defendant's father's bedroom. During the search, when agents recovered a quantity of crack cocaine from the kitchen, the defendant's mother falsely claimed that they were "her bath salts."

Following his arrest, the defendant waived his Miranda rights and made a lengthy statement to the FBI. Among other things, the defendant acknowledged his involvement in narcotics trafficking and various acts of violence, including shootings and two assaults. The defendant acknowledged that all 517 rounds of ammunition and one of the firearms in the residence were his but stated that the other firearm was his father's. The defendant stated that he possessed firearms to support his narcotics trafficking.

After his arrest, the defendant was taken to the hospital for treatment for a broken hand. Based on monitoring of the defendant's phone and the defendant's own post-arrest statement, that injury resulted from the defendant's recent violent assault of an individual whom the defendant wrongly believed to be a government informant.

After the defendant's arrest and the search of his residence, the grand jury returned a superseding indictment against the defendant and his brother. The defendant is now charged with:

(1) conspiring to distribute more than 50 grams of crack cocaine, which carries a 10-year statutory mandatory minimum sentence and a maximum sentence of life imprisonment;

(2) the unlawful use and possession of a firearm in connection with his narcotics trafficking, which carries a five-year statutory mandatory minimum sentence and a maximum sentence of life imprisonment; and

(3) the unlawful possession of a firearm by a convicted felon, which carries a ten-year statutory maximum sentence.

At the time of his arrest, the defendant was on probation for a felony conviction in North Carolina related to various crimes that he committed there. Among other things, the defendant has previously been convicted of carrying a concealed firearm, perjury, breaking and entering, and identity theft. He was also arrested in Arkansas in 2006 in connection with the transportation of multiple kilograms of cocaine, although that charge was ultimately dismissed. His criminal history report further reveals that he has frequently used the alias "Gus Rascoe" and that he has significant ties to North Carolina.

II. The Factors Supporting the Defendant's Pre-Trial Confinement

There is no condition or combination of conditions that will reasonably assure the defendant's continued appearance at court proceedings and the safety of others and the community.

First and foremost, the defendant has been indicted for conspiring to distribute significant quantities of crack cocaine in Brooklyn and unlawfully using a firearm in connection with that narcotics trafficking activity – which is a crime of violence. See 18 U.S.C. § 3142(g)(1)(noting that court should consider the "nature and circumstances of the offense charged, including whether the offense is a crime of violence"). If convicted of these offenses, he could be sentenced to life imprisonment and faces statutory mandatory minimum sentences of ten and five years.

These charges themselves (and the defendant's criminal history) create a presumption that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3)(A) & (B); 18 U.S.C. § 3142(e)(2)(A) & (f)(1)(E); United States v. Contreras, 776 F.2d 51, 55 (2d Cir. 1985).

Moreover, based on the FBI's investigation, the government's evidence in support of these charges is overwhelming. See 18 U.S.C. § 3142(g)(2). Among other things, and as noted above, the government's evidence includes:

- the defendant's confession;

- the two firearms, 517 rounds of ammunition, 70 grams of crack cocaine, 500 grams of powder cocaine, and other material recovered from the judicially-authorized search of his residence;

- the defendant's own statements regarding his narcotics trafficking obtained pursuant to judicially-authorized wiretaps; and

- seven controlled purchases of narcotics from the defendant's brother.

In short, the defendant is likely to be convicted of the charged offenses.

The "history and characteristics" of this defendant similarly weigh against any pre-trial release. As noted above, the defendant was on court-ordered probation from a prior felony conviction at the time of the instant offense. See 18 U.S.C. § 3142(g)(3)(B). His criminal history reveals that he was previously convicted of, among other things, perjury, identity fraud, and the possession of a concealed weapon. He also has frequently used an alias and has strong ties to North Carolina.

Finally, the defendant's pre-trial release would constitute a serious danger to specific individuals and to the community. See 18 U.S.C. § 3142(g)(4); see United States v. Millan, 4 F.3d 1038 (2d Cir. 1993). As noted above, this case involves a violent criminal enterprise responsible for narcotics trafficking and numerous acts of violence in Brooklyn. The defendant is one of the leaders of that enterprise, and there are co-conspirators who are not presently in federal custody. If he is released from custody, the defendant is much more likely to re-engage with that organization and maintain his involvement

with its activities.

Furthermore, there is a significant risk that the defendant may take steps against individuals who he believes are associated with the government's investigation. As noted above, the defendant recently committed a violent assault against an individual whom he wrongly believed to be a government informant. This case involves a government informant who participated in the controlled purchases of narcotics to the defendant's brother. Given the defendant's past acts - as well as his prior conviction for perjury - there is a substantial risk that he may go out and accuse all manner of people and take actions against other individuals in an effort to undermine the government's investigation.

In light of the foregoing, the government submits that each of the various factors related to pre-trial release support the conclusion that there is no condition or combination of conditions that will ensure that this defendant will appear in these proceedings or that will protect individuals associated with the government's investigation and the community as a whole.

III. The Proposed Conditions Are Insufficient

Notwithstanding the foregoing, the defendant contends that he should be released pending trial, with the conditions of home confinement and monitoring, based on a $250,000 bond secured by the defendant's residence and co-signed by his parents.

First and foremost, the defendant's meager bail package is grossly insufficient to rebut the statutory presumption against his pretrial release. See 18 U.S.C. § 3142(e)(3)(A) & (B); 18 U.S.C. § 3142(e)(2)(A) & (f)(1)(E); see United States v. Rodriguez, 950 F.2d 85, 88-90 (2d. Cir. 1991); United States v. Jackson, 823 F.2d 4, 6-7 (2d Cir. 1987); United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986).

Second, the defendant's offer of his own "stash house" as security for his bond is absurd. As noted above, the defendant used that residence in support of his narcotics trafficking activities. Agents recovered from the residence 2 firearms, 517 rounds of ammunition, over 70 grams of crack cocaine and 500 grams of powder cocaine, over $63,000 in United States currency, and narcotics-related items like a scale and cooking supplies. In light of its relation to the defendant's criminal activity, and as charged in the superseding indictment, the residence is subject to criminal and administrative forfeiture. Nevertheless, and defendant's claim to the contrary,

5

the government has estimated that the value of the residence is less than $20,000 in light of multiple refinancings by the defendant and his family.

Third, the defendant's proposed co-signors are not viable candidates to ensure that the defendant will abide by the terms of his pre-trial release. The defendant's parents lived with him and his brother in the "stash house." In light of the pervasive nature of criminal activity taking place at the residence and the scope of contraband recovered from inside, there can be no doubt that the defendant's parents were, at a bare minimum, aware of his criminal activity. Indeed, the mother took affirmative steps during the search of the residence to conceal some of the crack cocaine in the kitchen. The father, meanwhile, was apparently in possession of a loaded firearm, and there is evidence that he also may have been involved in the defendant's criminal activity.

In sum, neither the defendant's "stash house" nor his parents constitute acceptable security for purposes of any bail package for the defendant, nor does home confinement or electronic monitoring overcome the statutory presumption that no condition or combination of conditions could ensure the defendant's continue appearance in court or protect the community while this defendant awaits trial. See United States v. Mercedes, 254 F.3d 433 (2d Cir. 2001).

IV. Conclusion

For the reasons stated above, there is no condition or combination of conditions that will reasonably assure the defendant's continued appearance at court proceedings and the safety of others or the community. In addition, the proposed package is inappropriate and insufficient for this defendant.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney

By: *Carter Burwell*
Carter Burwell
Assistant U.S. Attorney
(718) 254-6313

cc: Charles Hochbaum, Esq.

6