FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ NOV 2 - 2011 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

ANTHONY MAYES, JR., ET AL.,

Defendants.

------------------------------------------------------------------X

10-CR-00473 (ARR)

NOT FOR PUBLICATION

MEMORANDUM AND ORDER[1]

ROSS, United States District Judge:

I. Introduction

I am asked to address the issue of whether a stipulation between the government and a criminal defendant is enforceable where the stipulation conditions the government's provision to the defense of draft transcripts of recorded, wiretapped conversations on their not being used in court and the defendant later seeks to introduce the draft transcripts in a motion to suppress. Defendant Anthony Mayes, Jr. ("defendant" or " the defense") urges me to allow him to disregard such a stipulation, entered into by his former counsel, on the grounds that the stipulation does not cover the documents he seeks to cite, that the materials are otherwise discoverable pursuant to Federal Rule of Criminal Procedure 16, and that portions of the documents may be introduced as Brady material. The defense also argues that the interests of justice and fundamental fairness require that I allow it to cite the documents at issue. The government asks me to enforce the stipulation. I have reviewed the submissions of the parties, and I find no reason to authorize the defendant to disregard the stipulation by using the government's draft transcripts as evidence in a suppression proceeding.

---

[1] This memorandum and order was first issued orally, in nearly identical form, on October 28, 2011.

1

II. Background

In July 2011, the government and the defense entered a stipulation agreement governing the prosecution's provision to the defendant of its draft transcripts of various audio recordings made pursuant to Title III authorizations in this case. Specifically, the stipulation states that "[d]raft transcripts provided to the defendant ANTHONY MAYES JR. by the United States or summaries, copies, redacted copies, or any portions thereof . . . cannot be used in any proceeding by any person." The agreement also expressly limits the use of such materials to trial preparation and prohibits their dissemination to persons who have not signed the stipulation.

In September 2011, the defense filed a motion to suppress, wherein it cited to documents called "linesheets." The government objected to the defense's reference to these documents on the basis that they were draft transcripts, the citation of which is prohibited by the terms of the stipulation agreement. Pursuant to the government's objection, the motion to suppress was removed from the docket, and the government requested that the defense amend its motion by removing any reference to the linesheets. The defense objected to the government's request and sought permission to go forward with its un-amended motion.

III. Analysis

As an initial matter, there is no question that the stipulation governs the use of the documents by defendant and his new counsel. Although defendant now claims that he did not agree to the stipulation, it is nonetheless binding on him because it was signed by his former counsel acting within the scope of his authority. See New York v. Hill, 528 U.S. 110, 115 (2000) ("[T]he defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney. . . . Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." (quoting Link v.

Wabash R. Co., 370 U.S. 626, 634 (U.S. 1962) (internal quotation marks omitted)). The stipulation provided that any use of the draft transcripts, by any person, was limited to trial preparation. That the defendant changed counsel and his new counsel was initially unaware of the stipulation agreement does not alter this result; nor does it absolve the defense from its obligation to adhere to the terms of the agreement pursuant to which the government made the materials at issue available to the defense.

The defense argues that the stipulation agreement does not apply to the documents cited in its motion because the documents are labeled "linesheets" and do not clearly fall within the rubric of the term "draft transcripts." On the contrary, I find that the stipulation agreement unambiguously covers the linesheets. The linesheets contain a synopsis of each telephone call being monitored, a summary thereof, and a line-by-line draft transcription of the conversations. It is clear that the linesheets are properly described as draft transcripts, as that term is commonly understood, and that the stipulation agreement therefore applies to them. The stipulation agreement also explicitly precludes the defense's proffer of the linesheets in its current motion before the court. The stipulation could not be clearer in this regard: it unequivocally states that the draft transcripts and any documents summarizing or containing excerpts of those transcripts "cannot be used in any proceeding by any person." The agreement also states that the draft transcripts' use is limited to trial preparation in this case. Citation to the draft transcripts in a motion to the court directly violates the terms of the stipulation agreement.

The defense argues, in the alternative, that it may proffer the linesheets because they are discoverable pursuant to Federal Rule of Criminal Procedure 16. That rule provides for disclosure of "any relevant written or recorded statement by the defendant." Fed. R. Crim. P. 16(a)(1)(B)(i). By its terms, the rule limits required disclosure to written or recorded statements

made by a defendant; it does not require the government to produce draft summaries of recorded statements made by a defendant where the recordings are themselves produced in discovery. Indeed, the government is under no general obligation to provide a transcript of audio recordings it has made available to defense counsel. United States v. Villanueva, No. 91-Cr.-976, 1993 U.S. Dist. LEXIS 6985 at *6 (S.D.N.Y. May 24, 1993), aff'd 14 F.3d 590 (2d Cir. 1993). The government's provision of its draft transcripts is voluntary and brings great benefit to the defense during its trial preparation. Access to the government's linesheets relieves the defense of the burden of producing its own transcripts in order to gain a general understanding of the tapes' content, and it helps the defense to identify which audio recordings merit greater attention. However, parting with these documents carries a risk to the government. In their unedited, unfinalized form, draft transcripts will almost inevitably contain typos, ambiguities, and preliminary impressions subject to subsequent revision. It is for this reason that the government only discloses them pursuant to the parties' execution of a stipulation agreement limiting their use. The stipulation ensures that the accuracy of the transcripts—which, in their draft form, the government does not undertake to ensure—does not itself become the subject of pretrial litigation.

The defense has intimated that it should be permitted to use the linesheets in this proceeding insofar as they are exculpatory and/or impeachment material pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and it argues that the interests of justice also demand that the linesheets be exploitable to the extent that they demonstrate agents' recklessness or deliberate disregard in drafting their affidavits. The defense urges me to allow it to cite the linesheets because, "[i]n that the defense motion has already been prepared and filed," fairness and judicial economy militate for moving forward and addressing these issues. The defense is mistaken: I

have not reviewed the motion submitted, as it was removed from the court's docket before I read it. Because I have not seen the motion, I am ignorant of precisely what <u>Brady</u> challenges the defense wishes to raise.

To the extent that the defense seeks to predicate any such challenge on discrepancies between the draft transcripts and some other piece of evidence, however, the precise purpose of the stipulation is to stave off litigation over such discrepancies. Because the linesheets do not carry any guarantee of accuracy, I cannot infer misbehavior on the part of the government or its witnesses from mere discrepancies between the linesheets and the prosecution's evidence. See <u>United States v. Daughtry</u>, No. 09-Cr.-1132, 2011 U.S. Dist. LEXIS 21081 at *7-8 (S.D.N.Y. Feb. 25, 2011) (declining to give weight to the fact that the government's drafts had differences in attributions to defendants where "the Parties ha[d] a stipulation providing that the transcript is only in draft form"). Therefore, to the degree that they exist, simple discrepancies between the draft transcripts and the sworn affidavits of agents cannot be proffered as evidence of recklessness or deliberate disregard on the part of affiants. If parties were permitted to bypass the stipulation and introduce the linesheets by labeling any errors or mistakes contained in the draft transcripts as exculpatory or impeachment material, the stipulations would be valueless, and the government would, in all likelihood, end its practice of providing draft transcripts to the defense. Such a result would be a great disservice to defendants generally. The interests of justice thus support enforcing the agreement. It is not, as the defense claims, fundamentally unfair to enforce the terms of a stipulation because the government is not similarly limited in its use of the draft transcripts, which it prepared.

IV. <u>Conclusion</u>

I find that the stipulation covers the linesheets and hold that, insofar as addressed in this

opinion, defendant may not cite them in proceedings before the court. The defense is free to file its motion in a form that is not violative of its stipulation with the government. Although it may be more time consuming, there is no reason why the defense cannot prepare its motion with citations to the audio recordings themselves rather than to the government's draft transcripts of the conversations recorded therein.

SO ORDERED.

/s/(ARR)

Allyne R. Ross
United States District Judge

Dated: November 1, 2011
Brooklyn, New York